UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| **TELEQUEST INTERNATIONAL CORP.,** | : : : | |
| | : | Civil Action No. 06-5359 (PGS) |
| | : : | |
| **Plaintiff,** | : : | |
| v. | : : | |
| | : | **OPINION** |
| | : : | |
| **DEDICATED BUSINESS SYSTEMS, INC., et al.** | : : : | _____ |
| | : : | |
| **Defendants.** | : : | |

This matter comes before the Court on the motion of Plaintiff for spoliation sanctions, specifically seeking that Defendants' Answer be stricken and default entered or, alternatively, seeking an adverse inference in Plaintiff's favor. For the reasons set forth herein, Plaintiff's motion seeking the entry of default judgment is hereby **DENIED**; Plaintiff's motion seeking an adverse inference and costs is hereby **GRANTED**.

## BACKGROUND

On November 7, 2006, Plaintiff TelQuest International Corporation ("TelQuest") instituted this action against Defendants Jason Hines and Dedicated Business Systems, Inc. ("DBSI"), asserting claims of fraud, misappropriation of confidential and proprietary information, breach of fiduciary duties, and breach of contract. According to Plaintiff, Hines, a former TelQuest employee, incorporated DBSI immediately after leaving his position at TelQuest. (Am. Compl. ¶ 36.) The Complaint charges Hines with stealing confidential company information from TelQuest computers and using such information in direct competition with TelQuest, in violation of a non-compete provision that was part of Hines' employment agreement. (*Id.* ¶¶ 24-26.)

Specifically, Plaintiff alleges that Hines stole a list of customers and vendors developed by TelQuest over the course of more than fifteen years. In support of this claim, TelQuest claims to have obtained a copy of a DBSI email allegedly sent by Hines to a former TelQuest employee, which included as an attachment a computer printout containing the TelQuest customers and vendors obtained by Hines during his employment with TelQuest.

The instant dispute regards the alleged lack of production and spoliation of materially relevant paper and electronic files during the course of this litigation.

As part of its discovery requests, TelQuest sought copies of documents evidencing communications between Hines and TelQuest customers and vendors, as well as emails evidencing communications with current and former TelQuest employees. After incomplete production of paper documents by DBSI, TelQuest sought access to DBSI computers in order to have a forensic copy of the hard drive made and analyzed. After continued resistance by Hines, TelQuest obtained a Court Order, dated March 27, 2008, directing Hines to produce "any and all computers used by Hines and or DBSI in connection with the sale, purchase or marketing of telecommunications equipment since January 2006," in addition to other outstanding discovery requests, by March 31, 2008. (Docket Entry No. 21).

Defendants failed to produce any computers by March 31, 2008, and, during a June 17, 2008 telephone conference before the Honorable Esther Salas, Defendants were again ordered to produce the computers. On June 19, 2008, Hines appeared pro se and delivered a computer to TelQuest's forensic consultant, The Intelligence Group ("TIG"). TIG's forensic analysis revealed the following:

- On June 17, 2008, two days before the delivery of the computer to TIG, a "defrag" program, which overwrites deleted data and undermines it recovery, had been run.

- Files potentially containing information about DBSI operations had been deleted and were at that point unrecoverable.

- Secure Clean, a program that "wipes" data from the hard drive so that it may not be recovered using conventional computer forensic tools, had been run on June 19, 2008.

- Secure Clean software had been uninstalled on June 19, 2008.

(Decl. of Michael Grennier ¶¶ 14-28.) ("Grennier Decl.")

It having been revealed during the July 11, 2008 deposition of Jason Hines that Hines routinely deleted business emails and other records, this Court entered an Order dated August 12, 2008, directing DBSI and Hines to "maintain any and all records, to the extent they exist, relating to the business of DBSI and Hines in their possession and control, including, hard copies of any and all business records . . . ." (Docket Entry No. 35). It was further ordered that DBSI and Hines were to "maintain any and all business records of DBSI and Hines, to the extent that they exist, contained on any electronic media . . . ." (*Id.*).

TelQuest now asks for the imposition of sanctions against DBSI and Hines for the alleged intentional destruction and/or deletion of materially relevant paper and electronic files. TelQuest seeks to be reimbursed for its attorney's fees and costs associated with identifying the destroyed evidence and the filing of this motion. In addition, Plaintiff asks that the Court enter an Order striking the Answer of Defendant Hines and entering a default judgment[1], or, in the alternative, an adverse inference in Plaintiff's favor. The parties waived oral argument.

## DISCUSSION

Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Tech., Inc. v. Samsung Elec. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (internal citation omitted). When spoliation occurs, courts may impose sanctions

---

[1] A Clerk's Entry of Default has already been entered against DBSI for failure to plead on May 28, 2008.

on the offending party because a litigant is "under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Scott v. IBM Corp.*, 196 F.R.D. 233, 249 (D.N.J. 2000). The range of potential spoliation sanctions includes dismissal of the action, exclusion of evidence, an instruction to the finder of fact allowing for an adverse inference, attorney's fees, and costs. *Mosaid*, 348 F. Supp. 2d at 335. This Court has authority to impose such sanctions pursuant to the Federal Rules of Civil Procedure and this Court's inherent authority. *Scott*, 196 F.R.D. at 247-48. The imposition of sanctions is "appropriate when there is evidence that a party's spoliation of evidence threatens the integrity of this Court." *Mosaid*, 348 F. Supp. 2d at 335.

In order to ascertain whether spoliation sanctions are appropriate, it must first be determined whether Defendants' duty to preserve evidence had been triggered at the time of the destruction of materials. *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). In his Declaration, Jason Hines essentially claims that he was unaware of any duty to preserve the deleted materials until the entry of the August 12, 2008 Order. (Decl. of Jason Hines ¶ 2.) ("Hines Decl.") A duty to preserve is an "affirmative obligation," which arises "when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis*, 529 F. Supp. 2d at 518. "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Scott*, 196 F.R.D. at 249.

In this case, Defendants' duty to preserve arose, at the latest, in November 2006, when TelQuest filed and served its Complaint. *See Mosaid*, 348 F. Supp. 2d at 336. At that time,

Defendants had notice that this litigation had begun and therefore had an affirmative obligation to preserve potentially relevant evidence, including business emails and materials related to Defendants' current and past clients.  Furthermore, Defendants were under this Court's Order dated March 27, 2008, which directed that Defendants produce all computers used by Defendants since January 2006.

Having determined that Defendants violated their duty to preserve evidence, the Court now turns to selecting an appropriate sanction.

### A.  *Default Judgment*

Default judgment is one of the most drastic sanctions "because [it] strike[s] at the core of the underlying lawsuit." *Mosaid*, 348 F. Supp. 2d at 335.  Accordingly it should only be imposed in severe situations.  *Id.*  In deciding whether default is an appropriate sanction, courts consider:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Mosaid*, 348 F. Supp. 2d at 335 (citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).

Courts have typically followed the progressive approach to sanctions, calling for warnings and lighter sanctions before the harshest sanctions are imposed.  Indeed, in choosing the appropriate sanction for the spoliation of evidence, courts should "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schimd*, 13 F.3d at 79.  Although this Court finds that Defendants' actions of running a "defrag" program two days prior to delivering the computer and subsequent use of Secure Clean Software (Pl.'s Br. in Supp. of Mot. for Sanctions 3) was in direct contravention of the Court's Order and violative of his duty to preserve evidence, the sanction sought by Plaintiff is extreme.

Because of the substantial implications associated with entering a default judgment, this Court declines to impose such a severe sanction in this case.

### B. Adverse Inference

An adverse inference, or the spoliation inference, is regarded as a "far lesser sanction," and is intended to level the playing field between the parties. *Mosaid*, 348 F. Supp. 2d at 335, 338. The spoliation inference informs the trier of fact that it may "receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Ref. Co.*, 72 F.3d 326, 334 (3d Cir. 1995) (internal citation omitted). Such a sanction should be imposed upon a finding that: (1) the evidence in question was within the party's control; (2) "it must appear that there has been actual suppression or withholding of the evidence"; (3) the evidence destroyed was relevant to the claims or defenses; and (4) it was reasonably foreseeable that the evidence would be discoverable in litigation. *Mosaid*, 348 F. Supp. 2d at 336 (internal citations omitted).

Here, the Court finds that the actions of the Defendants warrant a spoliation inference. There is very little dispute concerning the first factor. All of the materials were in the control of the Defendants, specifically Jason Hines. Hines testified at deposition that he was the sole caretaker of his company's records and that he was the primary user of the company's sole computer. (Decl. of Dennis F. Gleason, August 22, 2008, Ex. A at 15: 21-22, 16: 11-18.) ("Gleason Decl.") Thus, this prong is satisfied.

With respect to the third element, Defendants argue that "we do not even know if any evidence is missing or what it consists of." (Defs.' Br. in Opp'n to Mot. for Sanctions 4). The Court views this statement as a relevancy objection. (*See id.*). With respect to the former part of the statement, the clear forensic data revealed from TIG's analysis of the DBSI computer belies

the claim that no materials are missing. (Grennier Decl. ¶¶ 17-25, 29.) As for the claim that we don't know "what [the evidence] consists of," this Court feels that it is beyond argument that Defendants were aware that a lawsuit had been brought against them and that the subject matter of this lawsuit focused directly on Defendants' business activities and customer interactions. Therefore any emails and documents relating to these issues were potentially relevant.

  Defendants seek to rely on The Honorable William J. Martini's opinion in *Sarmiento v. Montclair State University* to escape sanctions. 513 F. Supp. 2d 72 (D.N.J. 2007). Defendants claim that *Sarmiento* stands for the proposition that where it is unclear that the destroyed evidence is relevant, spoliation sanctions may not be imposed. (Defs.' Br. 4). This interpretation misconstrues Judge Martini's holding. In *Sarmiento*, Judge Martini declined to impose sanctions on the defendant university following the "routine" destruction of notes taken during several interviews. *Sarmiento*, 513 F. Supp. 2d at 94. While *Sarmiento* did note that "[w]hether or not the notes would have been relevant to Plaintiff's summary judgment defense is speculative," the decision instead turned on factor four - whether it was reasonably foreseeable, at the time of destruction, that the materials would later be discoverable. *Id.* In that case, the destruction took place well before the lawsuit had been filed and, therefore, the defendant was not under a duty to preserve. *Id.* As noted above, this is far from the case here. Therefore, this decision is inapplicable to the case at bar.

  In any case dealing with the issue of spoliation, there will necessarily be some doubt as to the relevance of the missing evidence due to the mere fact that it is missing. Hines is correct that we do not know what is missing. Hines, however, does not deny that he routinely permanently deleted emails, including emails communicating with customers, in addition to invoices and other business documents during the course of this litigation. (Hines Decl. ¶ 2; Gleason Decl. Ex. A at 17-21.) Hines also continued to run a hard drive cleaning program after the

commencement of this lawsuit. (Gleason Decl. Ex. A at 23-24.) Hines' argument that there was no Court Order in place preventing him from taking such action is unavailing, especially given the affirmative duty imposed upon all litigants pursuant to the mandate of *Scott* and other related precedent. Further, Hines' claim that he only deleted "personal information" lacks merit. (Hines Decl. ¶ 2.) When the Court issued its March 2008 Order regarding the production of Defendants' computers, the Court specifically provided that information on the computers was to be for "attorneys' eyes only," thus rendering the continued deletion of any information, including personal information, inappropriate and unnecessary. (Docket Entry No. 21). Therefore, the fact that both the defragmentation program and the hard drive cleaning program were run within a week before production of the computer suggests that Defendants feared that the computer's contents would harm them.

  It cannot reasonably be imagined that *no* relevant information was deleted as the result of these purges, especially given the testimony of TGI analyst Michael Grennier that certain business-related documents, including a DBSI purchase order, were among the files discovered during the forensic analysis. (Grennier Decl. ¶17, 25.) Additionally, Hines testified that a number of paper records were discarded when DBSI moved offices in October or November of 2007, approximately one year after the commencement of this lawsuit. (Gleason Decl. Ex. A at 32-33.) Among these records were paper lists of DBSI customers. (*Id.*) It simply cannot be argued that a customer list is not relevant in a suit alleging the illegal misappropriation of customers. Therefore, the Court finds that factor three is satisfied, as Plaintiff has made a *prima facie* showing of relevance. Similarly, the Court finds that factor four is established, as it would be reasonably foreseeable that the relevant documents would later be sought in discovery because suit had already been filed at the time of destruction.

  Turning to the second factor, district courts within the Third Circuit are split regarding

the showing necessary to satisfy the "actual suppression" requirement. Some authority requires "that the evidence must be intentionally or knowingly destroyed or withheld, as opposed to lost, accidentally destroyed or otherwise properly accounted for," before giving rise to a spoliation inference. *Veloso v. Western Bedding Supply Co.*, 281 F. Supp. 2d 743, 746-49 (D.N.J. 2003); *Costello v. City of Brigantine*, No. 99-4072, 2001 WL 732402, at *26 (D.N.J. June 28, 2001). Other courts have held that the adverse inference is justified even where there is no evidence of the spoliator's knowledge or intent. *Scott*, 196 F.R.D. at 248-49; *Baliotis v. McNeil*, 870 F. Supp. 1285, 1291-93 (M.D. Pa. 1994).

This Court need not determine which approach is more appropriate, as an adverse inference is warranted in this case under either standard. Defendants were aware that they would have to turn over the DBSI computer. Yet, even after a Court Order was issued to that effect, Hines continued to delete emails and other potentially relevant records. This destruction was admittedly intentional, as evidenced by Hines's own deposition testimony. The same is true of the paper records discarded during the fall 2007 move. Therefore, the second prong is satisfied.

Because all four prongs have been met, this Court find that an adverse inference is appropriate in this case with respect to all materials deleted or destroyed following the commencement of this lawsuit. The Court is mindful that it must exercise its powers to impose this sanction with restraint and discretion. *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). Based on the evidence presented by Plaintiff, as well as Defendant Hines' own deposition testimony, the Court finds that an "adequate factual predicate" exists for the imposition of sanctions. *Id.*

### C. Attorney's Fees and Costs

Plaintiff also seeks an award of attorney's fees and costs associated with identifying the destroyed evidence and the filing of this motion. In spoliation cases, monetary sanctions are used

to compensate a party for "the time and effort it was forced to expend in an effort to obtain discovery" to which it was otherwise entitled. *Mosaid*, 348 F. Supp. 2d at 339.

While the Court agrees that monetary sanctions are appropriate in this case, Plaintiff has failed to provide the Court with evidence of the expenses incurred. Therefore, Plaintiff shall submit an affidavit setting forth such expenses within fourteen (14) days of the date herein. Defendants' response shall be due fourteen (14) days thereafter.[2]

## **CONCLUSION**

For the reasons set forth above, Plaintiff's request that Defendants' Answer be stricken and default judgment entered is DENIED. Plaintiff's request for a spoliation inference is GRANTED. An adverse inference should be provided to the jury at an appropriate time, as determined by the Honorable Peter G. Sheridan, U.S.D.J. Defendants shall also pay monetary sanctions, the amount of which will be determined pursuant to the instructions set forth herein. The Court will issue an appropriate Order.

s/ Esther Salas
**HONORABLE ESTHER SALAS,**
**United States Magistrate Judge**

---

[2] The parties are directed to The Honorable Ronald J. Hedges' opinion in *Mosaid Tech., Inc. v. Samsung Elec. Co. Ltd.*, 224 F.R.D. 595 (2004), for further direction in preparing responses to this order.